UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUZANNE STIMAC,<br><br>      Plaintiff,<br><br>      v.<br><br>J.C. PENNEY CORPORATION, INC.,<br><br>      Defendant. | No. 16 CV 03581<br><br>Magistrate Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Suzanne Stimac ("Stimac") sued Defendant J.C. Penney, Corporation Inc. ("J.C. Penney") for injuries she suffered after allegedly slipping and falling at a J.C. Penney retail store. Stimac filed her complaint in the Circuit Court of Will County, Illinois and the case was removed to this Court pursuant to 28 U.S.C § 1441(a). The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). On January 22, 2018, with leave of court, Stimac filed an amended complaint against J.C. Penney alleging common law negligence (Count I), *res ipsa loquitur* (Count II), and premises liability under 740 ILCS 130 *et seq*. (Count III) (Dkt. 46). J.C. Penney has moved for summary judgment on all three counts. For the reasons set forth below, J.C. Penney's motion for summary judgment [53] is GRANTED.

    I.      Factual Background

On October 3, 2014, Stimac and her husband visited a J.C. Penney store located in a shopping mall in Joliet, Illinois. (Dkt. 55-4 ¶¶ 3, 10, 18). After entering the store

1

through the exterior entrance, Stimac and her husband parted ways; Stimac headed toward the store's internal exit to leave J.C. Penney and enter the mall. (*Id.* ¶¶ 18, 19). At approximately 3:30pm, Stimac was in the J.C. Penney jewelry section when she slipped on a flyer and fell. (*Id.* ¶ 20; Dkt. 61 ¶ 21).[1] An unidentified male customer alerted J.C. Penney jewelry department sales associate, Jessica Las, that Stimac had fallen. (Dkt. 55-4 ¶¶ 5, 29). Las radioed for assistance and jewelry department supervisor, Diane Mittlestaedt arrived. (*Id.* ¶¶ 6, 30). Mittlestaedt then called the store manager, Minette Buchas to the scene. (*Id.* ¶¶ 7, 34). Stimac was helped to a seated position on a table nearby. (*Id.* ¶ 35). Sue Ruberts and her daughter, Kimberly Montgomery, who happened to be in the store shopping nearby, approached Stimac where she was seated; Ruberts had known Stimac since the 1970s. (*Id.* ¶ 37). After speaking with store manager Buchas, Stimac accompanied her husband to the men's department. The couple then left and went home. (*Id.* ¶¶ 44, 45).

As part of its advertisements, J.C. Penney uses 8 ½ x 11 inch laminated and unlaminated white paper to call out price points and sale prices. (Dkt. 61 ¶ 8). J.C. Penney employees are required to keep aisles clear of slip/fall hazards. (*Id.* ¶ 24).

Before her fall, Stimac did not see any paper, debris or laminate sign on the floor. (Dkt. 55-4 ¶ 22). She does not know how the flyer came to be on the floor or how long it had been on the floor before her fall. (*Id.* ¶¶ 23, 24). J.C. Penney employee Las also

---

[1] The Court uses the term "flyer" for ease of reference in this opinion even though the parties disagree about how to describe the object that Stimac allegedly slipped on. In her complaint Stimac alleges that she "slipped or tripped on an advertisement that was sitting on the aisle floor." (Am. Compl. ¶7) and in her deposition described it as a "laminate flyer", "laminate piece of paper", and "piece of paper." (Stimac Dep. 64:2, 74:11–13, 75:3).

did not see any paper, debris or laminated sign on the floor near the jewelry counters and did not know where the flyer came from, how it fell on the floor or how long it had been there. (*Id.* ¶¶ 31, 32). The day of Stimac's fall, at 2:57 pm, jewelry employee Tahmeena Ali ended her shift. She did not remember seeing a piece of paper where Stimac fell, but also did not perform an inspection of the area at the end of her shift. (*Id.* ¶ 8; Dkt. 61 ¶¶ 13, 18). Around 3:00pm,[2] Buchas and several other J.C. Penney employees began a daily "midday recovery" or cleanup of the junior's area. (Dkt. 55-4 ¶ 15). As part of this cleanup, Buchas walked past the jewelry counter area. (*Id.* ¶¶ 16). She testified that if a flyer was on the floor, she would have picked it up (Buchas Dep. 49:3–5) but did not know that any flyer was on the floor before Stimac's fall and did not know where it came from or how it came to be on the floor. (Dkt. 55-4 ¶ 42). Montgomery testified that the store appeared tidy that day. (*Id.* ¶ 40). Neither her nor her mother noticed any paper on the floor before Stimac's fall. (*Id.* ¶¶ 38, 41). After Stimac's fall, Montgomery testified that she saw a J.C. Penney employee pick up a piece of paper from the floor and write on the "white" back part. (Dkt. 61 ¶ 5). Mr. Stimac, Montgomery, and Las testified that they did not see the J.C. Penney advertisement depicted in the photograph at Exhibit K on the floor or jewelry counter after Stimac's fall. (*Id.* ¶ 26).

## II. Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] Stimac disputes the time this occurred. (Dkt. 55-4 ¶ 15).

law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed "must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Parties must set forth and respond to proposed undisputed facts and provide support with admissible evidence. *See id.*; L.R. 56.1.

In construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323; *see also White*, 829 F.3d at 841 (summary judgment is warranted where a reasonable juror could not find in favor of the non-moving "on the evidence submitted in support of and opposition to the motion for summary judgment.") (internal citation omitted).[3]

---

[3] Because jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C §1332(a), Illinois substantive law controls. *Protective Life Insurance Co. v. Hansen,* 632 F.3d 388, 392 (7th Cir. 2011) (a federal court sitting in diversity applies the substantive law of the state in which it is sitting).

4

### III. Discussion

#### A. Premises Liability (Count III)

In Illinois, property owners owe a duty to their invitees to maintain the premises in a reasonably safe condition. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) (citing Illinois law). To prevail on her premises liability claim, Stimac must show:

> (1) the existence of a condition that presents an unreasonable risk of harm to persons on the premises; (2) that the defendants knew, or should have known, that the condition posed an unreasonable risk of harm; (3) that the defendants should have anticipated that individuals on the premises would fail to discover or recognize the danger or otherwise fail to protect themselves against it; (4) a negligent act or omission on the part of the defendant; (5) an injury suffered by the plaintiff; and (6) that the condition of the property was a proximate cause of the injury to the plaintiff.

*Id.* (internal citations omitted). Focusing on the second element, J.C. Penney argues that there is no evidence that J.C. Penney had actual or constructive notice of the flyer on the floor before Stimac's fall. Stimac does not contend that J.C. Penney had actual notice. Instead she responds that she does not have to establish notice at all, and if the notice exception does not apply, there is a genuine issue of material fact about whether J.C. Penney had constructive notice.

#### *1. Notice Exception*

Relying on the "notice exception" set forth in *Donoho v. O'Connell's*, 148 N.E.2d 434 (Ill. 1958) and *Reed v. Walmart Stores, Inc.*, 700 N.E.2d 212 (Ill. App. Ct. 1998), Stimac seeks to have her claim submitted to a jury without showing that J.C. Penney knew or should have known about the flyer on the floor. In *Donoho*, the court stated,

> [w]here [] in addition to the fact that the substance on the floor was a product sold or related to defendant's operations, the plaintiff offers some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises, courts have generally allowed the negligence issue to go to the jury, without requiring defendant's knowledge or constructive notice.

*Donoho*, 148 N.E.2d at 439. In *Reed*, the court explained that the exception applies when a plaintiff (1) shows that the object is related to the defendant's business and (2) offers some slight evidence that the defendant or his employees, rather than a customer, placed the object on the floor. 700 N.E.2d at 214. Stimac has not satisfied either part of the test.

Stimac argues that the "instrumentality at issue was a component part of [J.C. Penney's] 'topper' and therefore related to [J.C. Penney's] business." (Dkt. 55 at 3). But the testimony Stimac relies on does not link the flyer to J.C. Penney. *No witness testified that the flyer she allegedly slipped on was part of a J.C. Penney advertisement.* Instead, witnesses testified generally about how J.C. Penney advertisements are used and displayed, speculated about how part of a such an advertisement could have ended up on the floor, and some said they saw a piece of paper in the area after Stimac's fall.[4] Stimac offers no evidence that the flyer had any feature identifying it

---

[4] Stimac cites her testimony that she slipped on a white paper with black lettering on it that was in a clear laminate plastic (Stimac Dep. 103:7-13); Montgomery's testimony that she saw an employee pick up the paper and "writ[e] on the back of it which would be the white part." (Montgomery Dep. 32:16-20); Rubert's testimony that the paper was 8.5 by 11 inches in size (Ruberts Dep. 48:6-18); Buchas's speculative testimony, in response to counsel's hypothetical question, that the flyer "must have fallen out of the sign holder" (Buchas Dep. p. 76); Stimac's husband's testimony that he saw a white piece of paper with black lettering on the counter and it might have said something about a sale or "20 to 40 percent, something like that." (Dean Stimac Dep. 47:15; 63:9-18); and Blackmon's testimony

6

as related to J.C. Penney's business. And witnesses expressly denied that Exhibit K (a photograph of a J.C. Penney advertisement) was what they saw that day.[5]

The Illinois Supreme Court's decision in *Olinger v. Great Atl. & Pac. Tea Co.*, 21 Ill. 2d 469 (1961) is instructive. There, the Court held that the "*Donoho* rule" did not apply because the evidence "failed to establish that the substance was related to defendants' operations." *Id.* at 476. The plaintiff testified that after falling in defendants' store, he noticed a substance on the floor where he slipped and described its size (small) and color (light red). Other witnesses testified that they observed a substance of similar size and color near where plaintiff had fallen. There was also evidence that on that day, bottles of Coldene, a red liquid cough medicine, were on display on the counter at the store. However, the Court found that there was no direct evidence about how the substance came to be on defendants' floor or what that substance was, and no one testified that the substance was Coldene. "The best that

---

that J.C. Penney generally uses signs for sales events (Blackmon Dep. pp. 25, 27). The Court notes that Stimac left out Mr. Stimac's testimony that after he said it could have said "20 to 40 percent", he testified "I don't know, you know. I am really not looking at those things anyways." (Dean Stimac Dep. 63:17-18). In addition, Stimac relies on one answer by Mittlestaedt in her deposition where Plaintiff's counsel asked, "You would agree that Suzanne Stimac informed you that she slipped on a piece of paper?" and Mittlestaedt responded, "Yes. That's what was in the report that I wrote." (Mittlestaedt Dep. 25:22-25). In the question before and throughout her testimony, Mittlestaedt insisted that she did not remember anything from that day. At best, this testimony would only show that Stimac slipped on *a piece of paper*.

[5] Although it is undisputed that Ms. Buchas testified that she saved the "actual sign" that day (Dkt. 61 ¶27), when asked how she knew that it was involved in the occurrence, she responded that it was because Stimac "told Diane [Mittlestaedt], that she slipped on that sign. She pointed to it." Mittlestaedt, at her deposition, did not testify to this. Buchas' testimony about what Stimac told Mittlestaedt is hearsay. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.").

7

can be said of plaintiff's evidence is that plaintiff slipped on a reddish substance and defendant sold red cough medicine called Coldene. Only by the wildest speculation could it be concluded from these facts that the substance on which plaintiff slipped was Coldene." *Id*. at 476. Likewise, the best that can be said is that Stimac slipped on a paper and J.C. Penney displayed advertisements which contained paper resembling the one Stimac slipped on. Therefore Stimac has not satisfied the first part of the *Donoho/Reed* exception.

J.C. Penney argues that even if Stimac was able to meet the first part of the test, she has not provided sufficient evidence that J.C. Penney or it employees, rather than a customer, caused the flyer to be on the floor. The Court agrees. In *Zuppardi v. Wal-Mart Stores, Inc.*, the Seventh Circuit rejected plaintiff's argument that she provided sufficient circumstantial evidence to make Wal-Mart's notice of the spilled water irrelevant, explaining, "Zuppardi has simply offered evidence that she slipped on something that happens to be sold by Wal-Mart, and such evidence fails to support an inference that Wal-Mart caused the spill." 770 F.3d 644, 649–50 (7th Cir. 2014) (quoting *Olinger*, 21 Ill.2d 469, 173 N.E.2d 443, 446 ("even where there is proof that the foreign substance was related to defendant's business, but no further evidence is offered other than the presence of the substance and the occurrence of the injury,...such evidence [is] insufficient to support the necessary inference.")). Similarly here, Stimac's arguments are speculative and unsupported.[6] There is no

---

[6] Stimac's reliance on Las's testimony that Las did not recall helping any customers between 2:30 and 3:30pm as proof that there were no customers in the area during that time is unconvincing.

8

evidence that a J.C. Penney employee handled a J.C. Penney advertisement before Stimac's fall. *Cf. Barnum v. Home Depot U.S.A., Inc.*, No. 15 cv 11087, 2017 U.S. Dist. LEXIS 166979, at *6–7 (N.D. Ill. Oct. 10, 2017) (where plaintiff claimed to have slipped on pallet jack at Home Depot, plaintiff pointed to sufficient evidence including manager's written statement that defendant employees were using pallet jacks the morning of plaintiff's fall and may have left the pallet jack in the aisle).

### *2. Constructive Notice*

Because Stimac is not exempt from providing evidence of notice, she must establish constructive notice by "presenting evidence that (1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care or (2) the dangerous condition was part of a pattern of conduct or recurring incident." *Zuppardi,* 770 F.3d at 651 (internal citations omitted). Stimac does not argue pattern or recurring incident so the question is whether there is a genuine issue of material fact that the flyer was on the floor for an amount of time such that J.C. Penney should have discovered it with ordinary care.

J.C. Penney argues that there is no evidence of how long the flyer was on the floor. Stimac responds that the "combined testimony of [Las, Buchas and Montgomery] establish that the [flyer] could have been on the aisle floor at various times before Plaintiff's fall." This assertion is far too vague.[7] The testimony Stimac relies on does

---

[7] In her response brief, Stimac theorizes that the flyer fell on the floor between 3:15 and 3:25pm (so approximately 5 to 15 minutes before Stimac's fall) or alternatively that it was on the floor "the entire time." These alternate theories confuse the issue and highlight that Stimac has provided no evidence of how long the flyer was on the floor. *See F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) (a court ruling on summary judgment need not search record "looking for factual disputes").

9

not provide any evidence from which an inference can be made about timing. The individuals' statements consist of what they observed *after* Stimac's fall or what they thought *could have* happened that day. No one testified that they saw or handled any flyer before her fall. "Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice." *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 482 (7th Cir. 2008) (citing Illinois law). In *Reid,* the Seventh Circuit affirmed summary judgment for defendant retail store, stressing that the length of time the substance was present is "of critical importance" to establishing constructive notice. *Id.* at 481–82 (internal citations and quotations omitted). Where the plaintiff failed to "indicate with any degree of certainty how long the milkshake had been on the floor," the Court found her contention that a factfinder could infer that it had been on the floor for an extended period of time to be "far too speculative." *Id.* at 482.

Assuming for sake of argument that there was evidence that the flyer was on the floor for thirty minutes (or longer), Stimac does not explain how that length of time demonstrates that J.C. Penney had constructive notice. Moreover Stimac admits in her brief, consistent with the testimony, that the flyer was inconspicuous. *See* Dkt. 55 at 6 (describing the flyer as "inconspicuous"); Stimac Dep. pp. 66, 71 (the flyer "just kind of blended in with the floor"; it was "clear plastic" and the floor was "white").[8] Considering that it is undisputed that the flyer was inconspicuous and that Stimac

---

[8] Although Stimac disputed this fact in J.C. Penney's statement (Dkt. 55-4 ¶21), her response did not comply with Local Rule 56.1 (requiring response, in the case of any disagreement, to contain specific references to the affidavits, parts of the record, and other supporting materials relied upon).

10

offered no evidence about the time the flyer was on the floor beyond mere speculation, there is no genuine issue of material fact about constructive notice in this case. *See Salata v. Coca-Cola Refreshments USA, Inc.*, No. 15-cv-248, 2016 U.S. Dist. LEXIS 54508 at *11 (N.D. Ill. Apr. 25, 2016) (on summary judgment, declining to make an inference about time where there was no direct evidence about time in the record and the "uncontested evidence reflects that the loose tile was not a conspicuous condition.").

In sum, summary judgment is proper on the premises liability claim because Stimac failed to show that the notice exception applies or provide evidence to create a genuine issue of material fact about J.C. Penney' constructive notice of the flyer.

### B. Negligence (Count I)

A plaintiff alleging common law negligence must prove that defendant owed a duty to plaintiff, defendant breached that duty, and the breach proximately caused plaintiff's injury. *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140 (1990). Businesses in Illinois owe a duty to exercise reasonable care to maintain their premises in a reasonably safe condition for invitees. *Id.* at 141. J.C. Penney concedes it owed Stimac a duty of care but argues that Stimac has failed to provide evidence of breach or proximate cause in order to survive summary judgment.

J.C. Penney argues that Stimac cannot prove that the flyer she allegedly slipped on was on the floor because of J.C. Penney's negligence. As discussed, Stimac does not offer any evidence that a J.C. Penney employee caused the flyer to be on the floor or that anyone knew how it came to be on the floor. Instead, Stimac contends that

11

J.C. Penney's violation of its own policies is evidence of negligence. Specifically, she asserts that J.C. Penney's "deviation from its policies, procedures and/or rules forms an evidentiary basis for a finding of negligence" and that deviation "resulted in an unreasonable risk of harm to Plaintiff."

J.C. Penney objects to Stimac raising a new claim charging it with violating its own policies and procedures. Stimac has waived this argument. *See Warren v. Solo Cup Co.,* 516 F.3d 627, 629 n.3 (7th Cir. 2008) (where plaintiff attempted to pursue new claim in response to defendant's motion for summary judgment, claim was waived because plaintiff failed to raise it in her complaint). Even if the Court accepted Stimac's argument that J.C. Penney's violation of its policies is evidence of negligence, her negligence claim still would not survive summary judgment.

J.C. Penney's alleged violation of its own policy, practice, or custom is not evidence that it was negligent in this case. A business policy does not impose a new or heightened legal duty of care beyond what Illinois law requires. In *Zuppardi,* Wal-Mart's policy required continuous monitoring of certain areas of the store. 770 F.3d at 652. But the Seventh Circuit held that the policy did not "create a new legal standard of ordinary care" and plaintiff's argument would "require the continuous monitoring and patrolling of a store's safety conditions that we and Illinois courts have summarily rejected." *Id.* (collecting cases).

The fact that Stimac fell, that J.C. Penney allegedly violated its own policy or that an employee did not believe that she had duty to keep the aisle clean[9] is not evidence that J.C. Penney did not exercise reasonable care to maintain its premises in a reasonably safe condition. "The mere happening of an accident does not entitle a plaintiff to recover. A plaintiff must come forward with evidence of negligence on the part of defendant and with evidence that the defendant's negligence was a proximate cause of the plaintiff's injuries." *Wash v. Benchmark Constr. Co.*, 2014 IL App (1st) 132771-U, ¶ 23 (internal citations and quotations omitted) (emphasis in original). Thus summary judgment is granted in favor of J.C. Penney on Stimac's common law negligence claim.

### C. *Res ipsa loquitur* (Count II)

In Illinois, the purpose of the *res ipsa loquitor* doctrine is "to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant." *Metz v. Cent. Ill. Elec. & Gas Co.*, 32 Ill. 2d 446, 449 (1965). The doctrine applies "only when the facts proved by the plaintiff admit of the single inference that the accident would not have happened unless the defendant had been negligent." *Britton v. Univ. of Chi. Hosps.*, 382 Ill. App. 3d 1009, 1012 (1st Dist. 2008). A plaintiff claiming negligence based on *res ipsa loquitur* must provide evidence that she was injured "in an occurrence that ordinarily does not happen in the absence of negligence" and "by an

---

[9] Las testified that she did not believe it was her duty to keep the aisles clean but would pick something up if she saw it on the floor, but did not remember seeing any flyer on the floor the day of Stimac's fall. Las Dep. pp. 70–74.

agency or instrumentality within the defendant's exclusive control." *Heastie v. Roberts*, 877 N.E.2d 1064, 1076 (Ill. 2007). The term "exclusive control" is not a rigid standard, "but a flexible one in which the key question is whether the probable cause of the plaintiff's injury was one which the defendant was under a duty to the plaintiff to anticipate or guard against." *Id.* Here, summary judgment in favor of J.C. Penney is warranted on Count II.

As an initial matter, Stimac makes the unsupported argument that J.C. Penney waived its right to challenge her *res ipsa loquitur* claim because it did not move to dismiss that claim. *Res ipsa loquitur* is a rule of evidence that allows for an inference or presumption of negligence based on circumstantial evidence. *Wilson v. Michel*, 224 Ill. App. 3d 380, 386 (1st Dist. 1991). Courts have decided its application on summary judgment without considering whether it had been challenged in a motion to dismiss. *See e.g.*, *Salata*, 2016 U.S. Dist. LEXIS 54508 (granting summary judgment because *res ipsa loquitor* did not apply to case as matter of law); *Daleus v. Target Corp.*, No. 10 C 4100, 2012 U.S. Dist. LEXIS 125202 (N.D. Ill. Sep. 4, 2012) (granting summary judgment in favor of defendant on plaintiff's *res ipsa* claim). The only case Stimac cites, *Cobb v. Marshall Field & Co.*, 22 Ill. App. 2d 143 (1st Dist. 1959), was decided on a post-trial motion, and does not stand for the proposition that a party can only challenge the application of *res ipsa* as a matter of law in a motion to dismiss.

As to the merits, J.C. Penney argues that Stimac has not established the single inference that she would not have fallen unless J.C. Penney was negligent. J.C. Penney submits that Stimac has not provided any evidence that J.C. Penney had

14

exclusive control over the flyer or that an employee caused it to be on the floor, and the facts show that it is just as likely that a customer caused it to be on the floor.

With regard to J.C. Penney's control, Stimac says that the facts show that J.C. Penney had a duty to "maintain and/or supervise the instrumentality in question" because its employees, not customers, were in charge of placing it in the store. Stimac cites deposition testimony that certain J.C. Penney employees were responsible for placing sale signage in the store (Buchas Dep. pp. 12–13; 16–17; 64) and that it is J.C. Penney's responsibility, not a customer's, to make sure that a flyer is properly placed. (Blackmon Dep. pp. 47–48). But Stimac fails to connect this testimony to the flyer she claims to have slipped on. Without any evidence that the flyer was part of a J.C. Penney advertisement or a J.C. Penney employee caused the flyer to be on the floor (regardless of whether it belonged to J.C. Penney or not), Stimac has failed to show that the flyer was under J.C. Penney's control or that the probable cause of her injury was one which J.C. Penney was under a duty to anticipate or guard against. *See Daleus*, 2012 U.S. Dist. LEXIS 125202, at \*11 (granting summary judgment on plaintiff's negligence claim based on *res ipsa loquitur* because the undisputed record showed there was "no evidence that the liquid [on the floor of the aisle] was caused by an employee of Target or even a product sold at the Store.").

Stimac further argues that that it was more probable that J.C. Penney caused the flyer to be on the floor because the circumstance of a customer removing a J.C. Penney flyer from a sign holder and dropping it has never occurred before at the store. Stimac cites testimony of employees that customers do not regularly handle flyers at J.C.

15

Penney and they had not observed a customer take a flyer out of a table topper before. Again, this general testimony does not show that the flyer Stimac slipped on was within J.C. Penney's control or that her fall ordinarily would not happen in the absence of negligence.

In *Salata*, plaintiff sued Coca-Cola after she slipped on a loose or broken tile in a Coca-Cola distribution facility. 2016 U.S. Dist. LEXIS 54508, at *1. Granting summary judgment in favor of Coca-Cola, the Court rejected plaintiff's *res ipsa* theory because the record showed that a reasonable inspection may not have revealed the loose tile and in addition, defendant provided other plausible explanations for the tile loosening other than defendant's negligence. *Id.* at *18–19. Here, as discussed, J.C. Penney's duty was to maintain its premises in a reasonably safe condition for invitees, not to continuously monitor its floors for objects that were indisputably inconspicuous. J.C. Penney has also pointed to other plausible explanations, including that a customer could have dropped a flyer on the floor. Although customers do not regularly handle J.C. Penney advertisements (Dkt. 61 ¶ 11), the evidence in the record shows that employees and other individuals have equal access to J.C. Penney advertisements. Accordingly even drawing all inferences in Stimac's favor, it was equally plausible that an employee or another individual was the reason the flyer was on the floor.

> "Clearly if two reasonable inferences are deducible from the same facts, one of which comports with defendant's responsibility and the other is directly contra thereto, neither should be indulged to permit recovery by use of the doctrine of *res ipsa loquitur* for the apparent reason that, if such a practice is permissible, a jury is called upon to enter the field of speculation and engage in a guessing contest."

16

*Britton,* 382 Ill. App. 3d at 1012. To support her argument that it was more likely a J.C. Penney employee, Stimac argues that J.C. Penney has not shown how busy the store was on October 3, 2014. At a minimum, however, it is undisputed that Stimac's fall occurred on a Friday in the afternoon, in the area of J.C. Penney's jewelry department, which is on the first floor, and the store has entrance/exists to the mall. (Dkt. 55-4 ¶¶11–12; Las Dep. pp. 34, 49). It is also undisputed that at least three other customers were in the area: an "unidentified" customer, Montgomery and her mother. Las also testified that Friday afternoons are busy and the jewelry department is in a high traffic area purposely located near the mall entrance. (Las Dep. p. 49).

Moreover, because no other witness saw Stimac fall and she has not established what the object was that she slipped on, the Court cannot rule out that her fall was purely an accident not due to any negligence. "*Res ipsa loquitur* does not apply if the injury can be as readily attributed to pure accident as to the defendant's negligence." *Cosgrove v. Commonwealth Edison Co.*, 315 Ill. App. 3d 651, 655 (2d Dist. 2000); *see also Harvey v. Aguirre Bldg. Maint., Inc.*, 2016 IL App (1st) 143169-U, ¶ 23 ("Slipping and falling on a floor happens quite commonly in the absence of negligence.").

Nevertheless, Stimac contends that summary judgment should be denied because there is a "genuine issue of material fact [] as to the instrumentality at issue." (Dkt. 55 at 15). But Stimac waived any argument that J.C. Penney failed to preserve or

produce evidence in discovery.[10] In addition, her argument that there is an issue of fact about the "instrumentality at issue" contradicts her assertion that the "instrumentality at issue was a component part of [J.C. Penney's] 'topper'." These arguments underscore why there is no genuine issue of material fact to submit to a jury and granting summary judgment is warranted. "We do not allow parties to send every speculation that they have to the jury despite an absence of evidence." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007).

### IV. Conclusion

For the reasons discussed, Defendant J.C. Penney's Motion for Summary Judgment [53] is **GRANTED**.

E N T E R:

Dated: October 10, 2018

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge

---

[10] If Stimac's argument is intended to raise a negligent spoliation claim, it is waived. *See Warren,* 516 F.3d at 629 n.3 (plaintiff's new claim raised in response to defendant's motion for summary judgment was waived). If the argument is that summary judgment should be denied because of deficiencies in discovery, it is similarly improper since Stimac never filed a motion during discovery arguing that J.C. Penney had failed to produce or preserve this evidence. *See Brill v. Lante Corp.,* 119 F.3d 1266, 1269, 1275 (7th Cir. 1997) (entering summary judgment for defendant proper despite defendant's alleged lack of response to discovery requests).